UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| BEVERLY SHIPMAN,<br><br>Plaintiff,<br><br>v.<br><br>GALLANT LAW GROUP, P.C.,<br><br>Defendant. | CIVIL COMPLAINT<br><br>CASE NO. 2:23-cv-00145<br><br>JURY DEMAND |

## COMPLAINT

NOW comes BEVERLY SHIPMAN ("Plaintiff") by and through the undersigned, complaining as to the conduct of GALLANT LAW GROUP, P.C. ("Defendant" or "GLG") as follows:

### NATURE OF THE ACTION

1. Plaintiff brings this action for damages pursuant to the Credit Repair Organizations Act ("CROA") under 15 U.S.C. § 1679 *et seq.*, the Texas Credit Services Organizations Act ("TCSOA") under Tex. Fin. Code § 393.101 *et seq.,* the Texas Consumer Debt Management Services Act ("TCDSMA") under Tex. Fin. Code § 394.201 *et seq.,* as well as claims of Breach of Fiduciary Duty, in connection with Defendant's unlawful conduct.

### JURISDICTION AND VENUE

2. This action arises under and is brought pursuant to the CROA. Subject matter jurisdiction is conferred upon this Court by 15 U.S.C §1679, as well as 28 U.S.C. §§1331 and 1337, as the action arises under the laws of the United States. Supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. §1367.

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, as Defendant conducts business within, and a substantial portion of the events or omissions giving rise to the claims occurred within, the Northern District of Texas.

## PARTIES

4. Plaintiff is a consumer over 18 years of age residing in Amarillo, Texas, which lies within the Northern District of Texas.

5. Defendant is a credit repair organization styling itself as a "debt resolution law firm," whose services are purportedly legal in nature and which include submitting disputes on behalf of consumers to creditors and credit reporting agencies in an effort to get negative and unverifiable information removed from consumers' credit reports and rendered uncollectible, in turn improving such consumers' credit. Defendant is a professional corporation organized under the laws of the state of Pennsylvania with its principal place of business located at 123 South Broad Street, Suite 1640, Philadelphia, PA 19109.

6. Defendant acted through their agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives and insurers at all times relevant to the instant action.

## FACTS SUPPORTING CAUSES OF ACTION

7. In approximately November of 2022, Plaintiff had a number of consumer obligations she wanted to address which were impacting her credit, and began looking into various credit repair and other similar services.

8. Plaintiff subsequently happened upon Defendant.

9. Defendant explained that its services were purportedly legal in nature and would include submitting disputes to credit reporting agencies and Plaintiff's creditors to force such entities to verify Plaintiff's debts, all in an effort to get Plaintiff's debts rendered uncollectible.

10. Defendant further represented that by using its services, Plaintiff would pay less than half of what she owed on her enrolled debts and that, as a result, she would not have to pay the full balance – further representing that, ultimately, Defendant's services would improve Plaintiff's credit and provide her financial freedom.

11. Defendant similarly represented that it would attempt to work with Plaintiff's creditors to settle Plaintiff's debts.

12. Finding desirable the nature Defendant's representations, Plaintiff entered into a contract with Defendant for the provision of services.

13. Plaintiff began making payments which totaled approximately $515 per month, and maintained these payments for approximately 4 months.

14. Plaintiff was current on her enrolled obligations at the time she enrolled in Defendant's services; however, Defendant instructed Plaintiff to cease paying her creditors and instead divert those funds to Defendant for services.

15. Plaintiff was not adequately or accurately apprised that she would have to cease paying creditors in order for Defendant's services to work.

16. Despite paying Defendant thousands of dollars over the course of several months, it failed to provide any services to Plaintiff or otherwise provide any results.

17. Upon information and belief, Defendant assessed fees for its services from Plaintiff's monthly payments, despite not providing any services or delivering any results that would have justified the retention of such fees.

18. Further, after four months of making payments, Defendant "transferred" Plaintiff's account to an entity referred to as Phoenix Law ("Phoenix").

19. Defendant had no authority to transfer Plaintiff's account in this manner.

20. Further, upon information and belief, Defendant, Phoenix, and the now-bankruptcy Litigation Practice Group ("LPG") are all involved in a scheme of shifting consumers from one provider to another once the fraudulent nature of the practice have been exposed.

21. Frustrated and distressed as a result of Defendant's collective conduct, Plaintiff sought out an attorney to investigate her rights, causing the incursion of time and resources.

22. Plaintiff has suffered concrete harm as a result of Defendant's actions, including but not limited to, emotional distress, aggravation, mental anguish, pecuniary loss stemming from the payments made to Defendant, payments made to Defendant in violation of state law, as well as numerous violations of her state and federally protected interests to be free from deceptive and misleading conduct on the part of purported credit repair organizations and debt management companies.

<u>COUNT I – VIOLATIONS OF THE CREDIT REPAIR ORGANIZATIONS ACT</u>

23. Plaintiffs repeat and reallege paragraphs 1 through 22 as though fully set forth herein.

24. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1679a(1) of the CROA.

25. Defendant is a "credit repair organization" as defined by §1679a(3) of the CROA, as it is a person who uses any instrumentality of interstate commerce or the mails to sell, provide, or perform any service, in return for the payment of money or other valuable consideration, for the express or implied purpose of improving a consumer's credit, credit history, or credit rating, or providing assistance to any consumer with regard to any activity or service for the purpose of improving a consumer's credit.

26. Defendant's services, at all relevant times, were represented has being for both the explicit and implicit purpose of improving Plaintiff's credit. Defendant suggested that its services would get debts rendered uncollectible and removed from her credit report, which would in turn obviate Plaintiff's need to repay those obligations, in turn improving her credit by having such obligations removed from her report and by no longer impacting Plaintiff's debt load.

    a.  **Violations of CROA § 1679b(a)**

27. The CROA, pursuant to 15 U.S.C. § 1679b(a)(3) prohibits any *person* from "mak[ing] or us[ing] any untrue or misleading representation of the services of the credit repair organization." Additionally, pursuant to 15 U.S.C. § 1679b(a)(4), any *person* is prohibited from "engag[ing], directly or indirectly, in any act, practice, or course of business that constitutes or results in the commission of, or an attempt to commit, a fraud or deception on any person in connection with the offer or sale of the services of the credit repair organization."

28. Defendant violated the above provisions of the CROA through the generally deceptive and misleading nature of their business practices. GLG represented to Plaintiff, and represents to consumers, that its debt validation services would be deserving of thousands of dollars in payments, and that payments should be diverted from creditors to Defendant. However, such dispute procedures, if they will result in any benefit to consumers, are self-help remedies available to any consumer who is aware of their rights. As discussed below, GLG had an obligation to explain these rights, which it failed to do. In any event, Defendant's practice of charging consumers thousands of dollars for such services is inherently deceptive and misleading. GLG deceptively and misleadingly failed to explain the unlikelihood with which its services would be effective and result in Plaintiff's debts being rendered uncollectible or unverified, instead preying upon consumers' desperation for improved credit and to have obligations resolved. Furthermore,

there is no reason a debt resolution contract, which purportedly did not involve payment of debts, would need to last for years. These services can be completed quickly, if they will be effective at all, and Defendant forcing consumers into lengthy contracts costing thousands of dollars with corresponding interest is inherently fraudulent when considering what GLG actually does.

29. GLG further violated the above provisions of the CROA through its conduct in contradicting its representations to consumers through contractual language. One example of this surrounds GLG's provision of advice that Plaintiff should cease paying her creditors. Despite GLG's explicit representation that Plaintiff needed to cease paying her creditors, GLG's agreement provides that "you have not been instructed by GLG or any agent of GLG to breach any legal duty you have undertaken, including any contractual obligation." GLG explicitly instructed Plaintiff to violate her contractual duties in furtherance of its own bottom line, and attempted to get around this fact through contractual language.

30. Further, GLG violated the above provisions of the CROA through its provision of advice that Plaintiff should cease paying her creditors and instead divert those funds to Defendant. GLG failed to adequately explain this aspect of its services prior to contracting with Plaintiff. Furthermore, because Plaintiff was current on her obligations at the time, and GLG purportedly charged Plaintiff for legal services designed deal with creditor harassment and to defend Plaintiff in connection with any lawsuits filed – GLG's advice would have caused Plaintiff to be subject to the conditions for which it was charging Plaintiff. Simply put, GLG is engaged in a pattern and practice of causing consumers financial distress, all premised upon the hope that, through such distress – which it charges consumers to assist with – it *might* be able to reduce the balance owed or otherwise get debts rendered uncollectible.

31. Defendant further violated the CROA when it deceptively and without authorization transferred Plaintiff to a new service provider. Defendant lacked this authority and Defendant's efforts to compel Plaintiff to continue making payments to this new company, despite no prior discussion or consultation, was done in a deceptive attempt to profit off of Plaintiff after blatantly misrepresenting its services and failing to provide any meaningful results or services to Plaintiff. Upon further information and belief, Phoenix is engaged in similarly fraudulent conduct as Defendant and Defendant's transfer is part of an overarching scheme to allow related entities to continue to profit off of fraudulent services.

  **b. Violation of CROA § 1679b(b)**

32. The CROA, pursuant to 15 U.S.C. § 1679b(b), states that "[n]o credit repair organization may charge or receive any money or other valuable consideration for the performance of any service which the credit repair organization has agreed to perform for any consumer before such service is fully performed."

33. GLG violated § 1679b(b) as it charged and received money from Plaintiff in exchange for the performance of its services before such services were fully performed. Upon information and belief, Defendant diverted portions, if not the entirety, of Plaintiff's obligations to its own pocket without providing any services to Plaintiff, let alone completely performing the services it was hired to perform.

  **c. Violations of CROA § 1679c**

34. The CROA, pursuant to 15 U.S.C. § 1679c, outlines the various disclosures that must be provided by credit repair organizations prior to signing consumers up for services.

35. GLG violated the above provision of the CROA through its failure to provide Plaintiff the requisite disclosures prior to contracting with Plaintiff.

    **d. Violations of CROA § 1679d**

36. The CROA, pursuant to 15 U.S.C. § 1679d(a), provides that no services may be provided by a credit repair organization "before the end of the 3-business-day period beginning on the date the contract is signed."

37. GLG violated the above provision of the CROA by purportedly performing services prior to 3 days following Plaintiff's execution of the agreement, which was designed to justify the upfront payment it collected.

38. § 1679d(b) outlines various requirements for the contracts between credit repair organizations and consumers.

39. GLG violated § 1679d(b) through its failure to enter into a contract with Plaintiff that complies with the CROA's requirements.

    **e. Violations of CROA § 1679f(b)**

40. The CROA, pursuant to 15 U.S.C. § 1679f(b), provides that "[a]ny attempt by any person to obtain a waiver from any consumer of any protection provided by or any right of the consumer under [the CROA] shall be treated as a violation of [the CROA]."

41. GLG violated the above provisions of the CROA through its efforts to obtain Plaintiff's waiver of the protections provided by the CROA through its contract with Plaintiff. GLG's contract contains a number of disclaimers which seek to insulate itself from liability in connection with claims under the CROA. Further, GLG's contract and extent to which it contradicts the advice and representations made to Plaintiff illustrates GLG's efforts to insulate itself from liability in connection with the way it represents its services to consumers.

WHEREFORE, Plaintiff, BEVERLY SHIPMAN, respectfully requests that the Honorable Court enter judgment in her favor as follows:

   a. Declaring that the practices complained of herein are unlawful and violate the aforementioned bodies of law;

   b. Awarding Plaintiff actual damages to be determined at trial, as provided under 15 U.S.C. § 1679g(a)(1);

   c. Awarding Plaintiff punitive damages, in an amount to be determined at trial, as provided under 15 U.S.C. § 1679g(a)(2)(A);

   d. Awarding Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. § 1679g(a)(3); and

   e. Awarding any other relief as the Honorable Court deems just and appropriate.

### COUNT II – VIOLATIONS OF THE TEXAS CREDIT SERVICES ORGANIZATION ACT

42. Plaintiff restates and realleges paragraphs 1 through 41 as though fully set forth herein.

43. Plaintiff is a "consumer" as defined by Tex. Fin. Code § 393.001(1).

44. Defendant is a "credit services organization" as defined by Tex. Fin. Code § 393.001(3).

   a. **Violations of Tex. Fin. Code §§ 393.201**

45. The TCSOA, pursuant to Tex. Fin. Code § 393.201, outlines certain requirements of the contracts entered into between consumers and credit services organizations. § 393.202 discusses the nature of a consumer's right to cancel contracts and how such right must be disclosed to consumers.

46. Defendant violated §§ 393.201(b)(1)-(4) & 393.202 through their failure to provide the information required under Texas law in the contract with Plaintiff. Defendant's contract fails to contain the requisite information.

   b. **Violations of Tex. Fin. Code § 393.302**

47. The TCOSA, pursuant to Tex. Fin. Code § 393.302, prohibits credit service organizations from receiving money for their services before such services are fully performed.

48. Defendant violated § 393.302 in much the same way it violated § 1679b(b) of the CROA.

### c. Violations of Tex. Fin. Code §§ 393.304(1) & 393.305

49. The TCSOA, pursuant to Tex. Fin. Code § 393.304(1), prohibits a credit services organization from "mak[ing] or us[ing] a false or misleading representation in the offer or sale of the services of the organization." Similarly, pursuant to Tex. Fin. Code § 393.305, "[a] credit services organization or a representative of the organization may not directly or indirectly engage in a fraudulent or deceptive act, practice, or course of business relating to the offer or sale of the services of the organization."

50. Defendant violated §§ 393.304(1) & 393.305 in much the same way it violated §§ 1679b(a)(3)-(4) of the CROA.

### d. Violations of Tex. Fin. Code § 393.307

51. The TCSOA, pursuant to Tex. Fin. Code § 393.307, provides that "[a] credit services organization may not attempt to cause a consumer to waive a right under this chapter."

52. Defendant violated § 393.307 through their attempts to obtain a waiver of Plaintiff's rights afforded her under the TCSOA.

WHEREFORE, Plaintiff, BEVERLY SHIPMAN, respectfully requests that the Honorable Court enter judgment in her favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b. Awarding Plaintiff actual damages pursuant to Tex. Fin. Code § 393.503(a)(1);

c. Awarding Plaintiff punitive damages pursuant to Tex. Fin. Code § 393.503(b);

d. Enjoin Defendant from further violations of law pursuant to Tex. Fin. Code § 393.502,

e. Awarding Plaintiff's costs and reasonable attorney fees, pursuant to Tex. Fin. Code §§ 393.503(a)(2)-(3); and,

f. Awarding any other relief the Honorable Court deems just and appropriate.

**COUNT III – VIOLATIONS OF THE TEXAS CONSUMER DEBT MANAGEMENT SERVICES ACT**

53. Plaintiff restates and realleges paragraphs 1 through 51 as though fully set forth herein.

54. Plaintiff is a "consumer" as defined by Tex. Fin. Code § 394.202(4).

55. Defendant is a "provider" of "debt management service" as defined by Tex. Fin. Code §§ 394.202(6) & (10).

  a. **Violations of Tex. Fin. Code § 394.207**

56. The TCDMSA, pursuant to Tex. Fin. Code § 394.207, provides that "[a] provider may not engage in false or deceptive advertising,"

57. Defendant violated § 394.207 in much the same way its deceptive representations regarding the nature of, and fees surrounding, its services violated § 1679b(a)(3)-(4) of the CROA.

  b. **Violations of Tex. Fin. Code § 394.209**

58. The TCDMSA, pursuant to Tex. Fin. Code § 394.209, outlines the various requirements of the contracts entered into between debt management providers and consumers.

59. Defendant violated § 394.209(b) through its failure to include the required statements, disclosures, and information in its contract with Plaintiff.

  c. **Violations of Tex. Fin. Code § 394.210**

60. The TCDMSA, pursuant to Tex. Fin. Code § 394.210(c), provides that "[a] provider may not impose fees or other charges upon a consumer or receive payment for debt management services until the consumer has entered into a debt management service agreement with the provider that complies with Section 394.209."

61. Defendant violated § 394.210(c) through its charging of Plaintiff for its debt management services without entering into a contract which complies with Texas law.

  d. **Violations of Tex. Fin. Code § 394.212**

62. The TCDMSA, pursuant to Tex. Fin. Code § 394.212, outlines a number of prohibited practices on the part of providers.

63. Pursuant to § 394.212(a)(9), a provider may not "engage in an unfair, deceptive, or unconscionable act or practice in connection with a service provided to a consumer."

64. Defendant violated § 394.212(a)(9) through the deceptive and unfair nature of the representations made to Plaintiff and manner in which its services were subsequently provided.

    e. **Violations of Tex. Fin. Code § 394.213**

65. Pursuant to § 394.213, "a provider has a duty to a consumer who receives debt management services from the provider to ensure that client money held by the provider is managed properly at all times."

66. Defendant violated § 394.213 through its failure to ensure that Plaintiff's money was managed properly. As discussed above, Defendant failed to meaningfully perform the services it represented, and similarly withheld Plaintiff's payments despite providing no services to Plaintiff.

WHEREFORE, Plaintiff, BEVERLY SHIPMAN, respectfully requests that the Honorable Court enter judgment in her favor as follows:

    a. Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

    b. Awarding Plaintiff actual damages pursuant to Tex. Fin. Code § 394.215(c);

    c. Awarding Plaintiff punitive damages pursuant to Tex. Fin. Code § 394.215(c);

    d. Enjoin Defendant from further violations of law pursuant to Tex. Fin. Code § 394.215(d);,

    e. Awarding Plaintiff's costs and reasonable attorney fees, pursuant to Tex. Fin. Code § 394.215(c); and,

    f. Awarding any other relief the Honorable Court deems just and appropriate.

### COUNT IV – BREACH OF FIDUCIARY DUTY

67. Plaintiff restates and realleges paragraphs 1 through 66 as though fully set forth herein.

68. GLG owed Plaintiff a fiduciary duty arising out of the nature of their relationship. GLG was purporting to provide legal and financial services to Plaintiff, inherently rendering it her fiduciary with regards to the services it was agreeing to perform.

69. GLG breached its fiduciary duty owed Plaintiff given the nature of the "services" it provided and provides to consumers generally. Despite purporting to have Plaintiffs' best interest in mind, GLG caused Plaintiffs significant hardship through its provision of objectively and unreasonably misguided advice, including but not limited to its suggestion that Plaintiff cease making payments to her creditors in connection with debts enrolled in its program. GLG's further overall deceptive and fraudulent conduct persistently put its own interests in front of Plaintiff's, and Defendant simply used Plaintiff as a cash machine to take her money and run. GLG completely disregarded the fiduciary duty it owed Plaintiff in furtherance of its own bottom line, and GLG's breach of such duty caused Plaintiff significant financial harm as well as emotional distress.

WHEREFORE, Plaintiff, BEVERLY SHIPMAN, respectfully requests that the Honorable Court enter judgment in her favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned bodies of law;

b. Awarding Plaintiff actual damages;

c. Award Plaintiff punitive damages;

d. Award Plaintiff reasonable attorney's fees and costs;

e. Enjoining GLG from continuing its unlawful conduct; and,

f. Awarding any other relief as the Honorable Court deems just and appropriate

Dated: August 30, 2023                                                             Respectfully submitted,

<u>s/ Nathan C. Volheim</u> (Lead Attorney)
Nathan C. Volheim, Esq. #6302103
*Counsel for Plaintiff*
Sulaiman Law Group, Ltd.
2500 South Highland Ave., Suite 200
Lombard, Illinois 60148
(630) 568-3056 (phone)
(630) 575-8188 (fax)
nvolheim@sulaimanlaw.com